# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

**R.W. HICKS ENTERPRISES, INC.,**

    **Plaintiff,**

**v.**                                               **No. 1:19-cv-2295**
                                                      **JURY DEMANDED**

**OWNERS INSURANCE COMPANY,**

    **Defendant.**

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, R.W. Hicks Enterprises, Inc., and for its First Amended Complaint against Owners Insurance Company would state and show as follows:

### PARTIES AND JURISDICTION

1. R.W. Hicks Enterprises, Inc. ("Plaintiff") is a corporation formed under the laws of the State of Tennessee, with its principal place of business located in Jackson, Madison County, Tennessee. At all times relevant hereto, Plaintiff had an insurable interest in the structures located at 367, 401, 407, 411, and 419 N. Royal St., Jackson, Tennessee and 239 E. Orleans St., Jackson, Tennessee. Each of the buildings referenced in the preceding sentence shall hereafter be referred to collectively as the "Insured Premises."

2. Owners Insurance Company ("Defendant") is an insurance company conducting business in the State of Tennessee, including Madison County, Tennessee. Defendant's principal place of business is located in the State of Michigan and was organized under the laws of the State of Michigan.

1

3. This Amended Complaint originates as a result of a storm event that damaged the structures located at the Insured Premises, and Defendant's wrongful failure and refusal to promptly and fully pay Plaintiff for the insured losses it sustained.

4. Jurisdiction and venue are appropriate in this Court.

## FACTS

5. At all times relevant hereto, Plaintiff was the insured policyholder pursuant to an insurance contract whereby Defendant agreed to insure the buildings located on the Insured Premises against property damage, being Policy 064619-03763750-16 (the "Policy"). The Policy is attached hereto as Exhibit "A" and is incorporated herein by reference as if set forth verbatim.

6. Below is an aerial photo that depicts the location of the insured buildings, identified by address:



7.  As relevant hereto, the term of the Policy was April 14, 2016 to April 14, 2017. Prior to the 2016 renewal, Defendant had insured the buildings on the Insured Premises for more than a decade and renewed the insurance policy annually.

8.  At all times relevant hereto, the Insured Premises consisted of six buildings with various types of roofing surfaces, including but not limited to asphalt shingles, low slope roofing, modified bitumen roofing, roll roofing, metal, etc.

9.  The Policy provided insurance coverage for loss or damage to the buildings located on the Insured Premises.

10. The Policy is an "all risk" policy, which means that it provides insurance coverage for all risks of direct physical loss to covered property unless the loss is specifically excluded or limited by the Policy.

11. As set forth in the Policy's declarations, coverage for the buildings and structures on the Insured Premises is on a "replacement cost" valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation.

12. Pursuant to the Policy and at all times relevant to this Amended Complaint, Plaintiff paid a premium to Defendant in exchange for insurance coverage as set forth in the Policy. Plaintiff paid the required premiums at all times relevant to this Amended Complaint.

13. On or about December 28, 2016 and/or March 27, 2017, a severe storm event with high winds and large hail struck the Insured Premises, causing substantial damage to the buildings located on the Insured Premises (the "Loss").  As a result of the Loss, the buildings located on the Insured Premises suffered immediate and direct physical loss, including but not limited to, damage to the roofs and other exterior components, as well as interior water damage as a result of leaks caused by the storm.

3

14. Prior to the Loss, the roofs of the building at the Insured Premises were well-maintained. The roofs were in good condition prior to the Loss, and there were no signs of systematic failure or deficiencies that would be typical of a roof that had reached the end of its service life.

15. The damage caused by the Loss to the roofs on the Insured Premises was typical of damage sustained to many roofs in the area during the December 28, 2016 storm event.

16. Plaintiff promptly reported the Loss to Defendant in the spring of 2017 after discovering roof leaks.

17. The Policy was in full force and effect at the time of the Loss, and the Loss is a compensable claim under the terms of the Policy. As it relates to the Loss, there is no applicable exclusion.

18. After the Loss, Plaintiff fulfilled all duties imposed upon it by the Policy.

19. Despite the fact that Plaintiff has fulfilled all duties imposed upon it by Defendant and is at no fault in this matter, Defendant has failed to fully and promptly pay Plaintiff's claim for insurance proceeds.

20. After the claim was reported, Defendant assigned the claim to one of its internal adjusters, Adam Beam. Mr. Beam inspected the Insured Premises on or around May 2, 2017. During Mr. Beam's initial inspection, he told Plaintiff's principal, Mr. Ronnie Hicks, that he did not see any hail damage to the buildings on the Insured Premises except for a small amount of damage on the roof of the 419 N. Royal St. structure. Approximately a week later, Mr. Beam sent Mr. Hicks an estimate to repair damage to the 419 N. Royal St., totaling $4,039.50 replacement cost value. Mr. Beam left Mr. Hicks with the impression that no insurance proceeds would be owed except for what he estimated on 419 N. Royal Street. Plaintiff, via Mr. Hicks, expressed its

disagreement with Defendant's conclusions and specifically asked Mr. Beam about leaks that were not present before the hailstorm, with specific reference to leaks in the Butler Building warehouse at 411 N. Royal St.

21. As time went on, more leaks began to surface at the Insured Premises, and Mr. Hicks contacted his insurance agent, Jim Wilson, to complain about Mr. Beam's handling of the claim.

22. Mr. Wilson suggested that Mr. Hicks contact a roofing contractor to inspect the buildings located on the Insured Premises. In response to that, Mr. Hicks contacted several reputable roofers in the Jackson area to inspect the buildings, all of which concluded that the buildings were damaged. Some roofers would not even inspect the roof when they learned that Adam Beam was the adjuster on the claim.

23. Mr. Hicks then contacted his insurance agent, Jim Wilson, again to complain about the lack of payment for the hail damage to the buildings. Mr. Wilson connected Mr. Hicks with Defendant's local claims supervisor, Bill Wooten. Mr. Hicks informed Mr. Wooten that he was displeased with Mr. Beam's attitude and manner that Mr. Beam was handling the claim.

24. In late January 2018, Defendant sent Doug Kineman to inspect the Insured Premises. Plaintiff believed that Mr. Kineman was a new adjuster that had been assigned the claim. After questioning Mr. Kineman during his visit, Plaintiff learned that Mr. Kineman worked for a company called Reliable Reports and had nothing at all to do with the storm damage claim, but instead he had been sent to the property to conduct an underwriting inspection. Plaintiff allowed Mr. Kineman to inspect the Insured Premises as he requested.

25. In February 2018, Plaintiff received the report prepared by Mr. Kineman, which made certain recommendations concerning the repair and maintenance of the structures located on

the Insured Premises.  One of the recommendations was for the replacement of moisture-stained ceiling tiles in several places.  Of course, the ceiling tiles were moisture damaged because of the leaking that had occurred since the Loss.  Another of the recommendations was for replacement of several of the roof coverings on the insured buildings, which were also damaged as a result of the Loss.  Defendant later sent Plaintiff a "Notice of Cancellation" and cancelled Plaintiff's insurance because Defendant was "unable to verify compliance with [the recommendations made by Mr. Kineman]."

26. In March 2018, an independent adjuster, Scott Wood with TW Claims Group, contacted Plaintiff and advised that Defendant had engaged him to inspect the buildings for storm damage caused by the Loss.  Mr. Wood encouraged Plaintiff to engage a contractor and indicated that he would then inspect the buildings with Plaintiff's contractor.

27. Later in 2018 after Plaintiff secured a contractor, Mr. Wood inspected the Insured Premises. During the inspection, Defendant's adjuster acknowledged damage to the buildings, and thereafter produced an estimate to repair the damage that totaled $225,838.44.  Mr. Wood agreed that the damage included in his estimate was hail damage that was consistent with the hailstorm of December 28, 2016.  Mr. Wood's estimate was generally consistent with a repair estimate prepared by Plaintiff's contractor, which totaled $231,995.02.

28. Mr. Wood reported his findings to Defendant's adjuster, Adam Beam, who advised Mr. Wood that Defendant would now require an appraisal of each structure to determine whether the Policy's coverage amounts satisfied the Policy's co-insurance provisions (which is a clause requiring that the buildings be insured to a certain percentage of the buildings' value for replacement cost coverage).  Defendant then conducted an appraisal and several weeks later determined the coinsurance requirements were indeed fulfilled.

29. Also, in response to Mr. Wood's reporting to Defendant regarding the severity of the storm damage, Defendant engaged an engineering company to inspect the buildings. The engineer concluded that several of the buildings were damaged by hail and that others were not or had been damaged by other hail storms prior to the December 2016 hail event. Specifically, the engineer engaged by Defendant concluded as follows:

   a. 419 N. Royal St. - both the north and south roof slopes damaged by hail
   b. 411 N. Royal St. – coating on metal roof damaged by hail
   c. 407 N. Royal St. – no hail damage to the metal roof decking
   d. 401 N. Royal St. – modified bitumen roll roofing and metal roof components damaged by hail impacts but no hail damage to the modified bitumen asphalt roof membrane
   e. 367 N. Royal St. – no hail damage
   f. 239 E. Orleans St. – hail damage to the asphalt shingle system

30. The engineer's conclusions substantially differed from the estimate prepared by Mr. Wood. Upon receipt of the engineer's report, Defendant instructed Mr. Wood to modify his estimate to include only certain portions of the damage, which he did. The modifications to the report caused the estimate to decrease from $225,838.44 to $28,608.42.

31. A portion of the disparity between Mr. Wood's original estimate and Mr. Wood's revised estimate was caused by Defendant's instruction to Mr. Wood to exclude certain slopes and elevations on the buildings on the basis that the hail damage was caused by a prior event. Even if that were true, such damage would still be covered because Defendant insured Plaintiff for more than a decade prior to the Loss.

32. Thereafter, in November 2018, Defendant sent Plaintiff partial payments for the Loss totaling $14,350.33 but has failed to fully pay and indemnify Plaintiff pursuant to the terms of the Policy.

33. Afterwards, Plaintiff requested that Defendant provide it with all documents and photographs regarding the claim, the report prepared by Defendant's engineer, all estimates obtained by Defendant, and all log notes associated with Plaintiff's claim. On Defendant's behalf, Mr. Beam sent Plaintiff the engineer's report but refused to provide the other documentation requested.

34. There is no reasonable coverage dispute or other justifiable reason for Defendant's failure to pay Plaintiff's claim associated with the damage sustained.

35. Defendant's failure to timely pay Plaintiff the amount owed pursuant to the Policy is without justification.

36. Defendant's failure to pay the money and benefits due and owing Plaintiff under the Policy has caused it to initiate this lawsuit to recover the insurance proceeds to which it is entitled.

37. As a direct and proximate cause of Defendant's actions/inactions, Plaintiff has sustained substantial compensable losses, including all amounts due Plaintiff under the Policy and other such costs and expenses incurred as a result of Defendant's wrongful conduct.

## CAUSES OF ACTION

### Count I – Breach of Contract (against Defendant)

38. The allegations contained in the preceding paragraphs of this Amended Complaint are incorporated herein by reference, as if set forth verbatim.

39. The Policy is a binding contract and is supported by valid consideration.

40. Defendant is in total, material breach of the Policy, and Defendant is liable to Plaintiff under the Policy for the storm-caused damage that occurred while the subject buildings were insured by Defendant. Specifically, Defendant breached its contract with Plaintiff by its failure and refusal to fully and promptly pay the amounts owed to Plaintiff as required by the terms of the Policy.

41. As a result of Defendant's breach of contract, Plaintiff has sustained substantial compensable losses for the amounts claimed under the Policy, including but not limited to the replacement cost of the damage to the Insured Premises, as well as consequential damages, plus interest thereon.

42. Defendant's actions and breaches have further caused Plaintiff great and substantial harm due to the fact that it has been unable to replace much of the damage caused by the Loss as a result of the financial hardship unduly placed upon it as a direct and proximate result of Defendant's failure to pay Plaintiff the proper amounts as required by the Policy.

43. Plaintiff has mitigated its losses to the extent possible.

44. Defendant is liable to Plaintiff for its losses.

45. Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct. App. Oct. 31, 2013). Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiff's claim when liability was clear; (2) refused and failed to conduct a reasonable investigation of Plaintiff's claim based on all available information; (3) unjustly refused to pay Plaintiff's claim for its own financial preservation with no reasonable or justifiable basis; (4)

refused and failed to obtain all reasonably available information and generally ignored Plaintiff's claim; (5) failed to adopt, implement, and enforce reasonable standards for the prompt investigation and settlement of claims arising under its insurance policies; (6) failed to treat Plaintiff's interests equal to that of its own; (7) failed to promptly provide Plaintiff with a reasonable explanation for its refusal to fully pay Plaintiff's claim; (8) failed to timely and fully pay all amounts due and owing under the Policy with no reasonable or justifiable basis; (9) made insufficient payments on the claim which Defendant knew did not properly indemnify Plaintiff; and (10) engaged in a course of conduct intentionally designed to minimize the amounts paid to Plaintiff.  Defendant knew, or reasonably should have known, that Plaintiff was justifiably relying on the money and benefits due it under the terms of the Policy.  Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendant consciously refused to fully compensate Plaintiff for its losses, and withheld monies and benefits rightfully due Plaintiff.  In so acting, Defendant intended to and did injure Plaintiff in order to protect its own financial interest, and should be punished.  Plaintiff seeks, and is entitled to, punitive damages.

**Count II – Statutory Bad Faith**

46.     The allegations contained in the preceding paragraphs of this Amended Complaint are incorporated by reference as if set forth verbatim herein.

47.     Defendant's refusal and failure to pay the amounts contractually owed to Plaintiff is arbitrary and capricious and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than sixty (60) days have passed since a formal demand has been made on Defendant and full payment has not been made for the Loss as required pursuant to the Policy for which the twenty-five percent (25%) statutory penalty for bad faith should be invoked.

48. The bad faith of Defendant is evidenced by the fact that, at all times material hereto, Defendant knew, or reasonably should have known that Plaintiff was justifiably relying on the money and benefits due it under the terms of the Policy and as otherwise promised and represented by Defendant, as well as the actions of Defendant as set forth in paragraph 49 below and 45 above. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendant consciously refused to pay in full Plaintiff's valid claim and withheld monies and benefits rightfully due to Plaintiff.

49. Defendant's bad faith is evidenced by all of the facts and allegations set forth above in this Amended Complaint, together with the following:

   a. Defendant's intentional failure to fully inform Plaintiff of its rights and obligations under the Policy;

   b. Defendant's intentional failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim when liability was reasonably clear;

   c. Defendant's intentional refusal to pay Plaintiff's claim in full and to otherwise honor its obligations under the Policy without conducting a reasonable investigation based on all available information;

   d. Defendant's intentional refusal to fully investigate Plaintiff's claim and to obtain all available information before alleging that it had no further obligations to Plaintiff;

   e. Defendant's failure to promptly provide Plaintiff with a reasonable and accurate explanation for its refusal to pay its claim in full;

    f.    Defendant's intentional failure to properly adjust Plaintiff's claim and to pay Plaintiff fully for its losses;

    g.    Defendant's intentional failure to pay all amounts due and owing to Plaintiff under the Policy with no reasonable or justifiable basis;

    h.    Defendant's misrepresentation to Plaintiff of its obligations under the Policy;

    i.    Defendant's failure to pay even the amounts acknowledged by its own consultants; and

    j.    Defendant's unjustified refusal to pay Plaintiff's claim for its own financial preservation.

50.    In so acting, Defendant intended to and did injure Plaintiff in order to protect its own financial interests and should be punished via the twenty-five percent (25%) bad faith penalty authorized by statute.

WHEREFORE, as a result of the foregoing, Plaintiff would respectfully request that proper process be issued and served on Defendant requiring it to answer or otherwise respond in the time period allotted by law, and that this Honorable Court award judgment against Defendant as follows:

    A.    For compensatory damages not to exceed $300,000;

    B.    For punitive damages not to exceed $3,000,000;

    C.    For a statutory bad faith penalty of twenty-five percent (25%);

    D.    For all costs incurred as a result of this action;

    E.    For pre- and post-judgment and interest; and

    F.    For such other further and general relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a jury of its peers.

                                                  Respectfully submitted,

GILBERT McWHERTER
SCOTT BOBBITT PLC


s/Clinton H. Scott
CLINTON H. SCOTT #23008
cscott@gilbertfirm.com
54 Exeter Road, Suite D
Jackson, Tennessee 38305
(731) 664-1340

J. BRANDON McWHERTER #21600
bmcwherter@gilbertfirm.com
JONATHAN L. BOBBITT #23515
jbobbitt@gilbertfirm.com
341 Cool Springs Blvd., Suite 230
Franklin, Tennessee 37067
(615) 354-1144

*Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the foregoing document was served upon the following, via the Court's electronic mailing system, on the 11th day of June, 2019.

Brad Box
bbox@raineykizer.com
Michael L. Mansfield
mmansfield@raineykizer.com
209 East Main Street
P.O. Box 1147
Jackson TN 38302-1147



                                                  s/Clinton H.Scott